IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICHARD SIERRA, VERONICA GOOCH, ROLAND SIERRA, LUCIA LLERAS DE LABRADA and, PRISCILLA LLERAS-BUSH, in her personal capacity and as Personal Representative of the ESTATE OF OLGA ROMAGOSA, | ) ) ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 22-366 (GBW) |
| TRAFIGURA TRADING LLC and TRAFIGURA GROUP PTE. LTD., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT TRAFIGURA GROUP PTE LTD.'S OPENING BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com
*Attorneys for Defendants*

OF COUNSEL:

Alex J. Brackett
Caroline Schmidt Burton
Andrew P. Thornton-Dibb
Jah Akande
MCGUIRE WOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA  23219-3916
(804) 775-1000

September 21, 2022

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... ii

NATURE AND STAGE OF THE PROCEEDING.......................................................... 1

SUMMARY OF ARGUMENT ......................................................................................... 1

BACKGROUND & STATEMENT OF FACTS .............................................................. 2

    I.    Title III contains specific requirements. ............................................................. 2

    II.    Plaintiffs' claims lack specificity about ownership. ............................................. 2

    III.    Plaintiffs misconstrue and misstate the Trafigura corporate structure in order to assert liability against TGPL. .................................................................. 3

LEGAL STANDARD........................................................................................................ 4

ARGUMENT ..................................................................................................................... 5

    I.    The Amended Complaint asserts no basis for personal jurisdiction over TGPL.................................................................................................................... 5

        A.    The subsidiary contacts alleged by Plaintiffs cannot be imputed to TGPL to establish personal jurisdiction................................................... 6

        B.    Plaintiffs cannot establish general federal long-arm jurisdiction. ............. 8

        C.    Plaintiffs cannot establish specific federal long-arm jurisdiction........... 10

    II.    Plaintiffs lack Article III standing.................................................................... 12

    III.    The Amended Complaint should be dismissed for failure to state a claim. ........ 13

        A.    Plaintiffs do not adequately plead knowing and intentional trafficking....................................................................................................... 13

        B.    Plaintiffs do not plausibly allege actionable acquisition of claims.......... 14

            1.    Alleged claims were acquired after the statutory cutoff. ............. 14

                i.    Olga Romagosa's descendants......................................... 14

            2.    Plaintiffs fail to plausibly plead actionable ownership interests. ...................................................................................... 15

i.  Plaintiffs fail to meet FCSC-related pleading requirements....................................................................... 16

ii.  Plaintiffs do not adequately plead that they own a claim........................................................................... 16

iii.  Plaintiffs do not adequately plead predecessor ownership......................................................................... 18

C.  The domestic takings doctrine bars Plaintiffs from Title III relief. ......... 19

CONCLUSION........................................................................................................... 20

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adtile Techs. Inc. v. Perion Network Ltd.*,
    192 F. Supp. 3d 515 (D. Del. 2016) ............................................................................6

*AMA Multimedia, LLC v. Wanat*,
    970 F.3d 1201 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 76 (2021) ......................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................16, 18

*Ballentine v. United States*,
    486 F.3d 806 (3d Cir. 2007) ...................................................................................5

*Baltimore Cty. v. Hechinger Liquidation Trust (In re Hechinger Inv. Co. of
    Delaware, Inc.)*,
    335 F.3d 243 (3d Cir. 2003) ...................................................................................4

*Barantsevich v. VTB Bank*,
    954 F. Supp. 2d 972 (C.D. Cal. 2013) ...................................................................9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................16, 18

*BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*,
    229 F.3d 254 (3d Cir. 2000) ................................................................... *passim*

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985) ...............................................................................................10

*Chavez v. Dole Food Co.*,
    836 F.3d 205 (3d Cir. 2016) (en banc) ...................................................................8

*In re Claim of Carleton*,
    Claim Nos. CU-2787 & CU-3749, Decision No. CU-3980 (Oct. 1, 1969) ............17

*In re Claim of McElfresh*,
    Claim No. CU-3713, Decision No. CU-5920 (Oct. 21, 1970) ................................17

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .................................................................................................8

*De Fernandez v. Seaboard Marine, Ltd.*,
    No. 20-cv-25176-BLOOM, 2021 WL 3173213 (S.D. Fla. July 27, 2021) ..............14

*Delprato v. Day Chevrolet Inc.*,
    427 F. App'x 86 (3d Cir. 2011) .................................................................................5

*Depriest v. Greeson*,
    213 So. 3d 1022 (Fla. Dist. Ct. App. 2017) ..........................................................15

*Douglass v. Nippon Yusen Kabushiki Kaisha*,
    996 F.3d 289 (5th Cir. 2021), *aff'd*, Nos. 20-30383 & -30379, 2022 WL
    3368289 (5th Cir. Aug. 16, 2022) ........................................................................8, 9

*Dudley v. Meyers*,
    422 F.2d 1389 (3d Cir. 1970) .................................................................................17

*Fed. Republic of Germany v. Philipp*,
    141 S. Ct. 703 (2021) ........................................................................................19, 20

*Fisher v. Teva PFC SRL*,
    212 F. App'x 72 (3d Cir. 2006) ...............................................................................6

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ...................................................................................16

*Funai Elec. Co. v. Personalized Media Commc'ns, LLC*,
    C.A. No. 15-558-RGA, 2016 WL 370708 (D. Del. Jan. 29, 2016) .........................4

*Glen v. Trip Advisor, LLC*,
    Nos. 21-1842 & -1843, 2022 WL 3538221 (3d Cir. Aug. 18, 2022) .....................12

*Gonzalez v. Amazon.com, Inc.*,
    No. 19-23988-Civ-Scola, 2020 WL 1169125 (S.D. Fla. Mar. 11, 2020) ..............14

*Greene v. New Dana Perfumes Corp.*,
    287 B.R. 328 (D. Del. 2002) ....................................................................................6

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ..................................................................................................8

*Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*,
    43 F.4th 1303 (11th Cir. 2022) .....................................................................1, 10, 12

*Herederos de Roberto Gomez Cabrera, LLC v. Teck Res., Ltd.*,
    535 F. Supp. 3d 1299 (S.D. Fla. 2021), *aff'd*, 43 F.4th 1303 (11th Cir. 2022) .......9

*Iglesias v. Pernod Ricard*,
    No. 21-12398, 2022 WL 1815846 (11th Cir. June 3, 2022) (per curiam)................7

*Kehm Oil Co. v. Texaco, Inc.*,
    537 F.3d 290 (3d Cir. 2008)......................................................................................7

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*,
  263 F. Supp. 3d 498 (D. Del. 2017)......................................................................7

*Pinker v. Roche Holdings Ltd.*,
  292 F.3d 361 (3d Cir. 2002)..............................................................................4

*Raza v. Siemens Med. Solutions USA, Inc.*,
  C.A. No. 06-132-JJF, 2007 WL 2120521 (D. Del. July 23, 2007)............................6

*Regueiro v. Am. Airlines, Inc.*,
  No. 19-cv-23965-JEM, 2022 WL 2399748 (S.D. Fla. May 20, 2022), *report
  and recommendation adopted in part*, 2022 WL 2352414 (S.D. Fla. June 30,
  2022), *appeal filed*, No. 22-12538 (11th Cir. Aug. 2, 2022) ...........................19, 20

*Rice v. Green*,
  941 So. 2d 1230 (Fla. Dist. Ct. App. 2006) .........................................................15

*Roe v. Wyndham Worldwide, Inc.*,
  C.A. No. 18-1525-RGA, 2020 WL 707371 (D. Del. Feb. 12, 2020) ...................4, 5

*Santiago v. Warminster Twp.*,
  629 F.3d 121 (3d Cir. 2010)..............................................................................5

*Saudi v. Acomarit Maritimes Servs., S.A.*,
  114 F. App'x 449 (3d Cir. 2004) ........................................................................8

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
  678 F.3d 235 (3d Cir. 2012).........................................................................5, 13

*Schulman v. Inst. for Shipboard Educ.*,
  624 F. App'x 1002 (11th Cir. 2015) ...................................................................9

*Schulz v. United States*,
  150 F. App'x 125 (3d Cir. 2005) ......................................................................16

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007).......................................................................................4

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016).....................................................................................12

*Tidwell v. S. Petro Holding LLC*,
  No. 2:19-cv-98-FTM-29UAM, 2019 WL 2173838 (M.D. Fla. May 20, 2019) ....................18

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021)..................................................................................12

*Walton v. Hadley*,
No. 13-cv-7907 (ER), 2014 WL 3585525 (S.D.N.Y. July 10, 2014) ..................................... 18

*White v. Parker (In re Estate of Hamel)*,
821 So. 2d 1276 (Fla. Dist. Ct. App.  2002) ........................................................................ 15

*Winer Family Trust v. Queen*,
503 F.3d 319 (3d Cir. 2007) ................................................................................................... 5

## Constitution and Statutes

U.S. Const. Art. III ...................................................................................................... *passim*

Helms-Burton Act, 22 U.S.C. §§ 6021, *et seq.* (Cuban Liberty and Democratic
Solidarity Act, Title III) .................................................................................... *passim*

22 U.S.C. § 6023 ....................................................................................................... 2, 14

22 U.S.C. § 6082 ...................................................................................................... *passim*

22 U.S.C. § 6083 ...................................................................................................... 16, 17

Fla. Stat. § 732.101(2) .................................................................................................. 15

Fla. Stat § 732.514 ........................................................................................................ 15

## Other Authorities

142 Cong. Rec. H1645-02 (Mar. 4, 1996), 1996 WL 90487 ...................................... 20

Fed. R. Civ. P. 4(k)(2) ................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(1) ............................................................................................... 2, 4, 5

Fed. R. Civ. P. 12(b)(2) ............................................................................................... 1, 4, 5

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 2, 4

## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs have sued under Title III of the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. §§ 6021, *et seq*. (the "Helms Burton Act"), seeking to recover the value of property the Castro Regime allegedly confiscated in 1960.  Plaintiffs seek recovery not from the Cuban Government, but rather a non-U.S. company, Trafigura Group PTE Ltd. ("TGPL"), alleged to be using the property as part of a mining operation.  Recognizing the lack of a direct TGPL nexus to the United States, Plaintiffs have littered their Amended Complaint with allegations regarding unrelated contacts and conduct of various independent TGPL subsidiaries. Within their scattered allegations, Plaintiffs fail to make a single assertion that would warrant disregarding the corporate form or support assertion of jurisdiction over TGPL.  For multiple reasons, the Court should reject Plaintiffs' effort and dismiss the Amended Complaint without leave to amend.

## SUMMARY OF ARGUMENT

First, the Court lacks personal jurisdiction over TGPL.  Plaintiffs fail to allege contacts with or directed towards the United States sufficient to satisfy Fed. R. Civ. P. 4(k)(2)'s demanding standard.  A recent Title III case, *Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303 (11th Cir. 2022),  is instructive.  Like the foreign defendant in *Herederos*, TGPL's affiliate connections with subsidiaries located or operating in the United States are insufficient to consider TGPL "essentially at home" in the United States for purposes of establishing general jurisdiction, or to have purposefully availed itself of the privilege of conducting activities in the United States for purposes of establishing specific jurisdiction.  Plaintiffs' claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

Second, there is no basis for subject matter jurisdiction.  Plaintiffs have not plausibly alleged ownership interests from which a cognizable injury-in-fact can flow, and therefore cannot

establish that TGPL has caused them concrete harm.  Further, application of Title III's statutory remedy in this case is at odds with Article III causation requirements.  Plaintiffs' claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of Article III standing.

Finally, Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6) for several critical failings, including inability to plead timely ownership of an actionable claim (for some Plaintiffs), failure to adequately plead ownership of interests in the subject property, failure to plead knowing and intentional trafficking and preclusion under the domestic takings rule.

## BACKGROUND & STATEMENT OF FACTS

### I.    Title III contains specific requirements.

Title III gives U.S. nationals who own claims to property confiscated by the Cuban government a cause of action against persons who traffic in that property, under certain conditions. 22 U.S.C. § 6082.  For property confiscated before March 12, 1996, no claim is viable "unless such national acquire[d] ownership of the claim before March 12, 1996." *Id.* § 6082(a)(4)(B).  U.S. nationals who timely acquired a claim may seek damages from "any person that . . . traffics in [the subject] property." *Id.* § 6082(a)(1)(A).  Persons "traffic" in confiscated property if they "knowingly and intentionally" "use[] or . . . benefit[] from confiscated property," "cause[], direct[], participate[] in, or profit[] from" trafficking by another person, or engage in trafficking through another person. *Id.* § 6023(13)(A).

### II.    Plaintiffs' claims lack specificity about ownership.

Plaintiffs seek damages for alleged trafficking in a "mining operation" that "the Cuban Government confiscated" in 1960. D.I. 9 ("Am. Compl.") ¶¶ 77, 97; ¶ 80.  According to Plaintiffs, the mining operation was incorporated under the name Minas de Matahambre, S.A. in 1921 ("the Company"). *Id.* ¶ 80.  The Company purportedly held mines, ranches and other assets, including interests relating to the port of Santa Lucia. *Id.* ¶¶ 81–90.

Plaintiffs assert that at the time of the mining operation's confiscation in 1960, its 54 shareholders were almost all successors of Manuel Luciano Diaz. *Id.* ¶ 97. They also allege that their claims were "inherited" from Amparo Diaz y Martinez ("Amparo Diaz")—one of several Diaz daughters—and her husband Ernesto Romagosa y Sanchez ("Ernesto"). Amparo Diaz and Ernesto died before March 12, 1996. The Amended Complaint does not (nor could it) allege that Amparo Diaz or Ernesto were U.S. nationals at any time before their deaths. Amparo Diaz and Ernesto had four children. *Id.*

The Amended Complaint does not state whether the alleged inheritance by any Plaintiff was pursuant to a will, through intestacy or otherwise. The Amended Complaint similarly fails to identify which property or property interests the Company allegedly held at the time of confiscation; the location, nature, or boundaries of such property; what specific interests in the Company the unnamed "successors of Manuel Luciano Diaz" held at that time; or what interests Plaintiffs now purport to own, aside from unspecified "inherited ownership interests" in the Company that they received, down the line, from Amparo Diaz and Ernesto. *Id.*

## III.   Plaintiffs misconstrue and misstate the Trafigura corporate structure in order to assert liability against TGPL.

The Amended Complaint essentially characterizes TGPL, the Trafigura Mining Group, and numerous Trafigura subsidiaries—most with no alleged connection to the purported trafficking at issue—as a collective entity, each member of which can purportedly be held accountable for the actions of the other under Plaintiffs' misinterpretation of Title III and of bedrock principles of corporate separateness. The judicially noticeable, publicly-filed documents Plaintiffs incorporate by reference confirm, among other things, that the Mining Group that lies at the heart of Plaintiffs' trafficking allegations is organizationally separate from TGPL and from other Trafigura entities, "with [its] own dedicated management and resources," and transacts with other members of the

Trafigura group of companies on an "arm's length basis." 2020 Euro Medium Term Note Programme Base Prospectus at 101–02 (Ex. A); 2020 Annual Report (Ex. B).[1]  The Court can take judicial notice of these documents, treat them as incorporated by reference and, consistent with them, reject Plaintiffs' attempt to misstate the nature of the Trafigura group of companies, the Mining Group's activities and the role TGPL plays as a non-operating holding company parent.

## LEGAL STANDARD

TGPL seeks dismissal under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, under Rule 12(b)(1) for lack of subject matter jurisdiction, and under Rule 12(b)(6) for failure to state a claim.  The Court should consider jurisdictional issues before reaching the merits.  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007); *Baltimore Cty. v. Hechinger Liquidation Trust (In re Hechinger Inv. Co. of Del., Inc.)*, 335 F.3d 243, 249 (3d Cir. 2003).

Rule 12(b)(2) requires the Court to dismiss any case in which it lacks personal jurisdiction. *Funai Elec. Co. v. Personalized Media Commc'ns, LLC*, C.A. No. 15-558-RGA, 2016 WL 370708, at *2 (D. Del. Jan. 29, 2016). "Once a jurisdictional defense has been raised, the plaintiff bears the burden of presenting a *prima facie* case that personal jurisdiction exists." *Roe v. Wyndham Worldwide, Inc.*, C.A. No. 18-1525-RGA, 2020 WL 707371, at *2 (D. Del. Feb. 12, 2020) (citing *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)).  A plaintiff "meets this burden by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Id.* (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)).  Although the Court must accept all well-pleaded allegations as true, *see Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002), "a Rule 12(b)(2) motion 'is

---

[1] The Amended Complaint cites, quotes and relies on public documents such as Trafigura's website, annual reports and financing records.  *See* Am. Compl. ¶¶ 21–22, 29–31, 33–53.

inherently a matter which requires resolution of factual issues outside the pleadings'" and, therefore, "'consideration of affidavits submitted by the parties is appropriate and, typically, necessary.'" *Roe*, 2020 WL 707371, at *2 (citations omitted). If a defendant contradicts allegations via affidavit or declaration, the plaintiff "'must present similar evidence in support of personal jurisdiction'" and cannot rely on "'mere allegations' to sustain [its] burden." *Id*.

A motion to dismiss for lack of Article III standing is "properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Plaintiffs bear the burden to establish subject matter jurisdiction, and "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

If the Court reaches the 12(b)(6) motion, it should dismiss unless Plaintiffs have pled "enough facts to state a claim to relief that is plausible on its face." *Delprato v. Day Chevrolet Inc.*, 427 F. App'x 86, 88 (3d Cir. 2011) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content"—not conclusory allegations—"that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (citation omitted). The Court must consider the Amended Complaint in its entirety, along with documents incorporated by reference and matters of which it may take judicial notice. *Winer Family Trust v. Queen*, 503 F.3d 319, 328-29 (3d Cir. 2007).

## ARGUMENT

### I. The Amended Complaint asserts no basis for personal jurisdiction over TGPL.

Plaintiffs pin their jurisdictional hopes solely on federal long-arm jurisdiction under Fed. R. Civ. P. 4(k)(2), which sets a demanding standard requiring "continuous and systematic contacts" with the entire United States. *BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*,

229 F.3d 254, 262 (3d Cir. 2000).   TGPL, a non-operating holding company incorporated in Singapore with no employees, business operations, or physical presence in the United States, has no direct contacts with the United States, much less the extensive contacts Rule 4(k)(2) requires. This includes no U.S. contacts *related to* this action or *from which* this action arises.

A.     **The subsidiary contacts alleged by Plaintiffs cannot be imputed to TGPL to establish personal jurisdiction.**

The Amended Complaint is devoid of direct jurisdictional contacts between TGPL and the United States, or allegations that even intimate it would be appropriate to set aside the corporate separateness of TGPL from its direct or indirect subsidiaries.   Further, it is apparent from the documents on which Plaintiffs rely that the Trafigura entities at issue in this case actively observe corporate formalities and operate independently.   *See* Ex. C, 2016 Annual Report at 2–3, 58–59; Ex. A, 2020 Euro Medium Term Note Programme Base Prospectus at 96.   The U.S.-facing contacts of Trafigura subsidiaries that are alleged in the Amended Complaint therefore cannot be imputed to TGPL to establish personal jurisdiction.

It is well-established that a parent corporation is not subject to personal jurisdiction merely because a subsidiary maintains sufficient contacts with the relevant forum.   *Adtile Techs. Inc. v. Perion Network Ltd.*, 192 F. Supp. 3d 515, 522 (D. Del. 2016).   And Delaware courts have been "very cautious about imputing even the acts of wholly-owned . . . subsidiaries to parent corporations without an analysis of whether the corporate veil should be pierced or whether the parent corporation actively employed the subsidiary as its mere agent or instrumentality." *Greene v. New Dana Perfumes Corp.*, 287 B.R. 328, 343 (D. Del. 2002) (citation omitted); *see also Fisher v. Teva PFC SRL*, 212 F. App'x 72, 76 (3d Cir. 2006) ("The activities of a parent company are imputed to the subsidiary only if the subsidiary is the parent's agent or alter ego so that the 'independence of the separate corporate entities was disregarded.'" (citation omitted)); *Raza v.*

*Siemens Med. Solutions USA, Inc*., C.A. No. 06-132-JJF, 2007 WL 2120521, at *3 (D. Del. July 23, 2007) (conducting agency analysis and declining to exercise personal jurisdiction over German parent where the record did not show the parent directed and controlled its U.S. subsidiaries).

Personal jurisdiction over a foreign parent corporation based on a subsidiary's contacts with the forum is thus proper only in the extraordinary situation where the parent controls the business operations and affairs of the subsidiary to such a degree that the subsidiary's separate existence is effectively a "mere sham." *BP Chemicals*, 229 F.3d at 263 (citation omitted); *see also Kehm Oil Co. v. Texaco, Inc*., 537 F.3d 290, 300 (3d Cir. 2008) (affirming dismissal of claim against foreign parent where plaintiffs failed to rebut evidence that subsidiaries operated independently); *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 508 (D. Del. 2017) (explaining that for the purpose of establishing personal jurisdiction, separate entities should be disregarded only in "exceptional" circumstances where plaintiffs demonstrate abuse of the subsidiary such that it has no "separate mind, will, or existence of its own" (citation omitted)). This demanding threshold is required in the Title III context. *See Iglesias v. Pernod Ricard*, No. 21-12398, 2022 WL 1815846, at *1 (11th Cir. June 3, 2022) (per curiam) (affirming district court dismissal of Title III action for lack of personal jurisdiction where plaintiffs failed to sufficiently allege "any of PRSA's subsidiaries were simply the alter-ego of PRSA. . . . [such] that PRSA's subsidiaries' contacts with the state of Florida could be attributed to PRSA"). Plaintiffs fail to plead allegations necessary to satisfy a finding of personal jurisdiction.

Without the ability to impute the unrelated contacts of various Trafigura subsidiaries to TGPL in support of an assertion of personal jurisdiction, Plaintiffs' case against TGPL collapses. *See Nespresso*, 263 F. Supp. 3d at 506 ("Since minimum contacts have not been established [against the foreign parent entity] through either a stream of commerce or agency approach, *ipso*

7

*facto*, personal jurisdiction cannot be predicated on Fed. R. Civ. P. 4(k)(2).").

    **B.**    **Plaintiffs cannot establish general federal long-arm jurisdiction.**

TGPL is a non-operating holding company with no operations in the United States, that owns no real property in the United States, does not own or lease any offices in the United States, and does not have an agent conducting business on its behalf in the United States. Plaintiffs plead an assortment of unrelated connections between TGPL and Trafigura affiliates in order to assert U.S. contacts, but they are at best random and attenuated. *See* Am. Comp. ¶¶ 33-52. Even assuming the allegations were accurate, they would not make TGPL "at home" in the United States and thus subject to general jurisdiction here.

For corporate entities, "it is incredibly difficult to establish general jurisdiction . . . in a forum other than the place of incorporation or principal place of business." *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (en banc). A party invoking general jurisdiction under Rule 4(k)(2) must demonstrate: (1) there is "a claim arising under federal law," (2) the defendant is "beyond the jurisdictional reach of any state court of general jurisdiction," and (3) the defendant has "sufficient contacts with the United States so that the court's exercise of personal jurisdiction over the defendant comports with the due process requirements of the Constitution or other federal law." *Saudi v. Acomarit Maritimes Servs., S.A.*, 114 F. App'x 449, 455 (3d Cir. 2004). The third prong of 4(k)(2)'s standard is extremely demanding and requires the defendant to have "continuous and systematic business contacts" with the United States. *See BP Chemicals*, 229 F.3d at 263 (finding lack of personal jurisdiction against foreign parent based on subsidiaries' U.S.-facing business contacts). In fact, the Fifth Circuit recently recognized that third prong incorporates the "lodestar for the 'exceptional case,'" endorsed in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), *see Douglass v. Nippon Yusen Kabushiki Kaisha*, 996 F.3d 289, 299-300 (5th Cir. 2021), *aff'd*, Nos. 20-30383 & -30379, 2022 WL 3368289 (5th Cir. Aug. 16, 2022) (en banc), and a court

presiding over a Title III case in the Southern District of Florida recently held that outside of certain singular exceptions, "it appears unlikely that general jurisdiction over a foreign defendant could ever be available under 4(k)(2)," *see Herederos de Roberto Gomez Cabrera LLC v. Teck Res., Ltd.*, 535 F. Supp. 3d 1299, 1306  (S.D. Fla. 2021), *aff'd*, 43 F.4th 1303 (11th Cir. 2022).

Recognizing the high bar set by Rule 4(k)(2), federal courts routinely reject jurisdiction over foreign corporations with U.S. contacts, including when they send employees to the United States, enter into contracts with United States residents, and export products to the United States. *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–17 (1984); *BP Chemicals*, 229 F.3d at 262; *Douglass*, 996 F.3d at 299-300 (holding that despite "vast amounts of [U.S.] shipping business"—including 11 U.S. subsidiaries, operations at six U.S. airports and dozens of U.S. ports, licensing and oversight by a federal agency, and stock trading with U.S. investors, personal jurisdiction "[could] not be constitutionally established"); *Schulman v. Inst. for Shipboard Educ.*, 624 F. App'x 1002, 1005-06 (11th Cir. 2015) (holding a French manufacturer that had distribution agreements with dealers in Florida, marketed its vessels in Florida, attended a trade show in Florida, and had an agreement with a Maryland-based financing company to help buyers and dealers in the United States failed to satisfy general jurisdiction under Rule 4(k)(2)).

If a smattering of disconnected contacts such as those alleged by Plaintiffs in support of jurisdiction in this case were sufficient to establish general jurisdiction over foreign entities, any U.S. subsidiary relationship could conceivably subject an indirect non-U.S. parent to U.S. jurisdiction in connection with business conducted wholly outside the United States with no U.S. nexus.  Plaintiffs must, at a minimum, demonstrate that *TGPL* solicits or conducts business in the United States or otherwise expressly targets the U.S. market in a substantial, continuous and systematic manner.  *See Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 995 (C.D. Cal. 2013)

(finding lack of minimum contacts in a Rule 4(k)(2) analysis and noting plaintiff's failure to show

defendant "in any way target[ed] the United States as a potential market," despite allegations that

defendant invested in U.S. joint venture fund central to the litigation); *see also AMA Multimedia,*

*LLC v. Wanat*, 970 F.3d 1201, 1212 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 76 (2021).  They fail

to do so and, accordingly, come nowhere close to meeting Rule 4(k)(2)'s demanding standard.

Importantly, even when courts do analyze the "cumulative effect of [the] various contacts"

of a foreign entity's subsidiaries in the United States, they will not find personal jurisdiction under

Rule 4(k)(2) absent specific allegations that the parent "wholly ignored" the separate status of the

subsidiaries and dominated their affairs.  *See BP Chemicals*, 229 F.3d at 263.  The Eleventh Circuit

reaffirmed this point in the recent *Herederos* Title III decision, where the plaintiff sued a Canadian

parent that had allegedly trafficked in confiscated mines in Cuba.  After evaluating various U.S.-

facing contacts of the parent's U.S. subsidiaries, the Eleventh Circuit affirmed the district court's

finding that each subsidiary had maintained separate independence from the parent, and thus

general jurisdiction over the parent could not be established.  *Herederos*, 43 F.4th at 1312-13.

Plaintiffs have not so much as alleged TGPL's domination of its subsidiaries or disrespect

of the corporate form.  In fact, in their briefing of co-defendant Trafigura Trading LLC's ("TTL's")

Motion to Dismiss, Plaintiffs expressly disclaimed their need to do so.  D.I. 15 at 17 n.2.  This

further undermines Plaintiffs' effort to establish general jurisdiction.

### C.   Plaintiffs cannot establish specific federal long-arm jurisdiction.

To invoke specific jurisdiction, a plaintiff must show that a nonresident defendant

"'purposefully directed' his activities at residents of the forum . . . and the litigation results from

alleged injuries that 'arise out of or relate to' those activities." *Burger King v. Rudzewicz*, 471 U.S.

462, 472 (1985) (quoting *Keeton v. Hustler Magazine*, 465 U.S. 770, 774 (1984) and *Helicopteros*,

466 U.S. at 414).  As described above, TGPL has no contact with the United States that relates in

any way to Plaintiffs' claims, and has not purposefully directed its activities at U.S. residents. Nor does this litigation arise from or relate in any way to any purported contacts with the United States. Notably, not one of the alleged jurisdictional contacts between a Trafigura entity and the United States not otherwise addressed below has any relation to Cuba, EMINCAR, any alleged trafficking in property tied to Plaintiffs' claims or to any purported harm alleged by Plaintiffs. Accordingly, they are entirely irrelevant and carry no weight in this specific jurisdiction analysis.

Plaintiffs' jurisdictional allegations as to TGPL are further undermined by the Declarations submitted herewith, which, among other things, establish unequivocally the following with respect to TTL, the jurisdictional linchpin of the Amended Complaint:

- TTL has not funded or facilitated the funding of EMINCAR, any EMINCAR-related business activities, nor any investments or business activities in or relating to Cuba;

- TTL is well-capitalized, operates independently of TGPL and its non-U.S. sister entities, and is responsible for conducting trading business in the United States;

- TTL has no involvement with any offtake from the EMINCAR mining operations, which is not sold or imported by any Trafigura entity into the United States, but rather is all sold to non-U.S. entities for import into non-U.S. markets;

- TTL has not received any revenue, profits or benefits from EMINCAR-related activities;

- TTL does not act as an agent for any other Trafigura entity, but rather is an independent operating entity that trades and otherwise conducts business on its own account;

- No funding or financing of Trafigura's investment in EMINCAR has been in U.S. dollars or paid via U.S. banks or financial institutions, involved U.S. persons or U.S. operations of Trafigura such as TTL, involved any financing vehicle guaranteed by TTL or in which TTL is in any way involved, or otherwise involved efforts to access U.S. financing or capital markets; and

- None of Trafigura's TTL-related financing transactions is designed to facilitate financing for the Mining Group, EMINCAR or anything relating to Cuba.

*See* Declarations of Dan Peters (Regional Controller, TTL), Ex. D; Denise Rogers (Compliance Manager, TTL), Ex. E; Jesus Ivan Munoz Cuevas (Concentrates Operational Manager, Trafigura PTE Ltd.) Ex. F; and Chris McLaughlin (Global Head of Group Treasury, Trafigura Holding

GmbH), Ex. G.  Any effort by Plaintiffs to invoke specific Rule 4(k)(2) jurisdiction over TGPL thus fails.  *See Herederos*, 43 F.4th at 1311 (finding Title III plaintiff's suit did not arise out of or relate to foreign defendant's U.S. ties and "because a relationship between defendant's conduct within the forum and the cause of action is necessary to exercise specific jurisdiction, the lack of any such relationship here dooms [plaintiff]'s effort to establish specific personal jurisdiction").

## II.   Plaintiffs lack Article III standing.

To establish Article III standing, Plaintiffs "must clearly . . . allege facts demonstrating" concrete "injury in fact," "even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-41 (2016). Here, Plaintiffs cannot plead the concrete injury or causation elements of Article III standing, *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203–04 (2021), because this lawsuit does not seek to remedy any concrete harm caused by TGPL.

Although the Third Circuit recently found, in *Glen v. Trip Advisor, LLC*, No. 21-1842 & -1843, 2022 WL 3538221 (3d Cir. Aug. 18, 2022), that a Title III plaintiff sufficiently pled Article III standing, that decision is not binding.[2]  Importantly, neither the Third Circuit nor this Court have had the opportunity to address a plaintiff's inability to demonstrate a concrete harm from a defendant's alleged use of real property in which plaintiffs have not plausibly alleged a relevant property interest, or the impermissibility of requiring a party to remedy harm that the Cuban Government caused by confiscating property decades before any alleged trafficking.

The Amended Complaint lacks any allegation the Company owned mining concessions giving it the right to exploit minerals in the area where EMINCAR's mining operations are located. Under long-standing principles of Cuban law, all mineral rights belong to the state and can be

---

[2] The 2-1 decision in *Glen v. Tripadvisor* was not afforded precedential value. One jurist, Judge Bibas, would have found that the plaintiff lacked Article III standing "because his harm does not bear a close relationship to any of the kinds of harms that have historically given rise to a claim for unjust enrichment."  2022 WL 3538221, at *2 nn.1 & 2.

exploited only under a mining concession.[3] With no concession, Plaintiffs cannot plead a cognizable injury due to mining operations. Any alleged use of other facilities such as the port of Santa Lucia, even were they accurate, likewise fails to invade any legally-protected interest of Plaintiffs.  At best, Plaintiffs allege the Company was the port and customs agent, enjoyed related concessions, and had a contract to complete a construction project owned and funded by BANDES, the Cuban economic and social development bank. Am. Compl. ¶¶ 82-89. The Amended Complaint thus fails to show Plaintiffs have suffered the concrete injury that Article III requires.

Plaintiffs lack standing for the independent reason that Article III causation is not satisfied. Title III's remedy is tied to an injury caused by a government act of confiscation unconnected to any harm caused by TGPL's subsequent alleged trafficking.  Causation is not satisfied where—as here—the injury sought to be remedied was caused not by the defendant, but rather by "the independent action of some third party not before the court." *Schering Plough*, 678 F.3d at 247.

## III.   The Amended Complaint should be dismissed for failure to state a claim.

### A.   Plaintiffs do not adequately plead knowing and intentional trafficking.

Title III imposes liability on parties that "knowingly and intentionally" traffic in confiscated property, such that they: (1) knew or had reason to know that the property was confiscated, (2) knew or had reason to know that the property belonged to a U.S. national, and (3) intended to traffic in that confiscated property. *See* 22 U.S.C. §§ 6023(9), 6023(13)(A); *Gonzalez v. Amazon.com, Inc*., No. 19-23988-Civ-Scola, 2020 WL 1169125, at *2 (S.D. Fla. Mar. 11, 2020) (conclusory allegations failed to plausibly show defendants "knew the property was confiscated

---

[3] *See* 1940 Cuban Constitution – Article 88 (attached hereto as Ex. H translation included); Mines and Minerals, *Cuba Law Digest*, Martindale-Hubbell Law Directory, Vol. IV (19th ed. 1958) (attached hereto as Ex. I); U.S. Dep't of Interior, *Summary of Mining and Petroleum Laws of the World* (1961) (attached hereto as Ex. J); *The Pan American Union, Mining and Petroleum Legislation in Latin America – Vol. II (Panama, Central America, Mexico, Cuba, Haiti, Dominican Republic* (1960) (attached hereto as Ex. K).

by the Cuban government" or knew "it was owned by a United States citizen"). Plaintiffs'

conclusory allegations do not show knowing and intentional trafficking by TGPL. Part of this

failure stems from Plaintiffs' misuse of publicly available Trafigura documents referenced in the

Amended Complaint. Those documents show that, contrary to Plaintiffs' characterization, TGPL

is not directing activities of the Mining Group or otherwise engaging in mining operations in Cuba.

Moreover, no allegation asserts facts suggesting TGPL undertook any actions with knowledge it

would be trafficking in confiscated property or acting with intent to do so.

**B.    Plaintiffs do not plausibly allege actionable acquisition of claims.**

Plaintiffs have not shown their claims were acquired before Title III's statutory cutoff or

that they otherwise have actionable ownership interests as required by 22 U.S.C. § 6082(a)(1)(A).

**1.    Alleged claims were acquired after the statutory cutoff.**

Title III includes a threshold requirement that for any "property confiscated before March

12, 1996, a United States national may not bring an action . . . on a claim to the confiscated property

unless such national acquires ownership of the claim before March 12, 1996." *Id.* § 6082(a)(4)(B).

In fact, *every court* to interpret that provision has held that plaintiffs must allege that they inherited

or otherwise "acquire[d]" their claims before March 12, 1996. *De Fernandez v. Seaboard Marine,*

*Ltd*., No. 20-cv-25176-BLOOM, 2021 WL 3173213, at *8 & n.7 (S.D. Fla. July 27, 2021) (citing

extensive rulings on this issue).  In an amicus brief, the United States agreed that Title III plaintiffs

must acquire their claims before the statutory cutoff, and that inheritance is a form of acquisition.

*See* Br. for U.S. as Amicus Curiae, at 24–25, *Del Valle v. Trivago GmbH*, No. 20-12407, 2022 WL

1135131 (11th Cir. Apr. 11, 2022).

**i.    Olga Romagosa's descendants**

On the face of the Amended Complaint, the earliest Plaintiffs Lucia Lleras de Labrada and

Priscilla Lleras-Bush would have acquired any claims to the property would have been in 1998

upon the death of their mother Olga Romagosa—two years *after* the March 12, 1996 statutory cutoff. Am. Compl. ¶ 97, 99. Plaintiff Priscilla Lleras-Bush is also prosecuting a claim in her capacity as Personal Representative of Olga Romagosa's estate. Am. Compl. ¶ 18 (referencing *In re Estate of Olga Romagosa y Diaz*, Case No. 2022-000651-CP-02). Under Florida law, ownership of claimed interests and any associated Title III claim would have automatically vested in Olga Romagosa's successor(s) when she died in 1998, regardless of when any will was probated. Fla. Stat § 732.514; *see also Rice v. Green*, 941 So. 2d 1230, 1231 (Fla. Dist. Ct. App. 2006). Publicly available probate docket information demonstrates that in February 2022, well over two decades after Olga Romagosa died, Lleras-Bush sought to open probate proceedings. But such unilateral efforts do not ultimately affect *when* the rights to any claim vested. Order, *Escalon v. Trafigura Trading, LLC,* No. 4:21-cv-00659 (S.D. Tex. Mar. 15, 2022), ECF No. 49, at 6; *see also Depriest v. Greeson*, 213 So. 3d 1022, 1025 (Fla. Dist. Ct. App. 2017); *White v. Parker (In re Estate of Hamel)*, 821 So. 2d 1276, 1279–80 (Fla. Dist. Ct. App. 2002) ("Generally, property rights passing by virtue of the death of a person vest at the time of death."). Whether the property passed by devise or intestate, it is the death of the decedent that vests an estate's right to the property. Fla. Stat. §§ 732.101(2) (involving intestate estates); *id.* § 732.514 (involving devises).

The earliest Olga Romagosa's successors or estate may have acquired a claim to the confiscated property was after the cutoff date. Accordingly, their claims should be dismissed.[4]

### 2. Plaintiffs fail to plausibly plead actionable ownership interests.

This Court should also dismiss the Amended Complaint based on Plaintiffs' failure to plead sufficient factual detail showing their "ownership of an interest in property." *See* 22 U.S.C.

---

[4] Two Plaintiffs—Márian Maria de los Angeles Romagosa and Lisette Romagosa Smyrnios, both children of Angela Romagosa—have filed notices of dismissal in this case. D.I. 13, 14. They too were unable to establish that any claim would have been acquired before Title III's statutory bar.

§ 6083(a).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Plaintiffs' claims should be dismissed because they do not allege sufficient, non-conclusory facts showing ownership of a Title III claim.

### i.      Plaintiffs fail to meet FCSC-related pleading requirements.

The Helms-Burton Act requires a plaintiff who brings an action based on an uncertified claim (such as those in this case) to establish that the interest in property underlying that suit is not the subject of another person's claim certified by the Foreign Claims Settlement Commission ("FCSC"), 22 U.S.C. § 6082(a)(5)(D); and prohibits any U.S. national who was eligible to file a claim with the FCSC but failed to do so from bringing a Title III action based on that claim.  *Id.* § 6082(a)(5)(A).  Plaintiffs' Amended Complaint fails to meet either requirement: it does not allege that the confiscated property is not the subject of a certified claim or that Plaintiffs' predecessors were ineligible to file a claim with the FCSC.

### ii.     Plaintiffs do not adequately plead that they own a claim.

Plaintiffs also fail to plead facts showing they indeed own a claim to the property at issue.  When property ownership is an essential element of a claim, a plaintiff must allege sufficient, non-conclusory facts showing ownership.  *See Schulz v. United States*, 150 F. App'x 125, 127-28 (3d Cir. 2005) (affirming dismissal of claim seeking return of seized property based solely on "conclusory" allegations because plaintiff "provided no evidence that he had an ownership interest in the seized property"); *Dudley v. Meyers*, 422 F.2d 1389, 1394–95 (3d Cir. 1970) (holding that to show property ownership plaintiff "must rely upon the strength of their own title and not upon the weakness of that of the defendant[]"). This standard applies in the Title III context.

16

Title III allows the FCSC to act as special master to determine claim ownership, 22 U.S.C. § 6083(a)(2); thus, FCSC precedents are instructive as to the facts a Title III plaintiff should be expected to plead to survive a motion to dismiss, such as the existence of "[c]ertified copy of deeds, extracts from property registers, contract of purchase or other evidence of claimant's ownership of property." FCSC, Final Report of the Comm'n's First Cuba Claims Program—*Section II Completion of the Cuban Claims Program Under Title V of the International Claims Settlement Act of 1949*, at 120 (1972), Ex. L. The FCSC has regularly certified claims supported by this type of evidence and denied those that lacked it. *See, e.g.*, *In re Claim of McElfresh*, Claim No. CU-3713, Decision No. CU-5920 (Oct. 21, 1970).

In the specific context of claims based on mining interests, the FCSC has refused to certify even when a claimant provided evidence of ownership in Cuban mining companies, including stock certificates, correspondence, mining reports, assays, maps and other data, if they could not also show ownership of the concessions needed to exploit the minerals at issue. This was the case in *In re Claim of Carleton*, Claim Nos. CU-2787 & CU-3749, Decision No. CU-3980 (Oct. 1, 1969), where the FCSC found claimant's extensive documentary evidence insufficient to establish a valid claim where it did not include evidence needed to determine ownership rights in mining concessions at the time of the subject mine's nationalization. *Id.* at 9; *see also McElfresh*, Decision No. CU-5920, at 3. Although Plaintiffs need not *prove* their ownership interests at this stage, they must *allege* adequate, specific facts to plausibly assert they own an actionable mining interest.

The Amended Complaint does not meet this standard. Plaintiffs make conclusory and thinly documented ownership allegations that do not indicate what, if any, level of ownership Plaintiffs' predecessors may have held or inherited in the confiscated property. Their only allegations regarding their ownership interest in the Confiscated Property is the conclusory

allegation that "Plaintiffs' claims were inherited from Ernesto Romagosa y Sanchez and Amparo Diaz y Martinez" coupled with the assertion that they descend from children of Ernesto Romagosa y Sanchez and Amparo Diaz y Martinez.  Am. Compl. ¶¶ 97–100.

The Amended Complaint contains no allegations that property interests were ever specifically devised or otherwise conveyed *to any* Plaintiff.  Plaintiffs must allege facts, and not just legal conclusions, sufficient to state a claim to relief that is plausible on its face under *Twombly* and *Iqbal*.  *See Tidwell v. S. Petro Holding LLC*, No. 2:19-cv-98-FTM-29UAM, 2019 WL 2173838, at *2 (M.D. Fla. May 20, 2019) ("unsupported, conclusory allegations of ownership fail to state a claim"); *Walton v. Hadley*, No. 13-cv-7907 (ER), 2014 WL 3585525, at *4 n.17 (S.D.N.Y. July 10, 2014) ("Defendant's argument that his conclusory assertion of ownership is enough to move the case beyond the pleading stage is unavailing.").  Plaintiffs fail to do so.  For this reason as well, their claims should be dismissed.

### iii.   Plaintiffs do not adequately plead predecessor ownership.

Plaintiffs' naked ownership allegations do not indicate what level of ownership Plaintiffs' testators may have held in the confiscated property.  The documents Plaintiffs cite do not identify any mining concessions in the area where EMINCAR operates.  The allegations outline in conclusory fashion various properties and assets the Company is alleged to have owned *at some point in time*, but with no specifics as to what the Company held *at the time of confiscation*, where and to what extent those holdings allegedly overlap with EMINCAR's current area of operation, and who held what interests in the Company.  The Amended Complaint is speculative as to what interests, if any, Plaintiffs' predecessors owned at the time of confiscation and whether EMINCAR is in any way encroaching on those alleged holdings.  The pleading standard requires more.

**C.      The domestic takings doctrine bars Plaintiffs from Title III relief.**

Finally, Plaintiffs' conspicuous inability to plead that the immediate victim of the alleged confiscation was a U.S. national is significant.  Any taking by Cuba of property belonging to its own nationals implicates the domestic takings rule, which provides that "'[w]hat another country has done in the way of taking over property of its nationals . . . is not a matter for judicial consideration here.'"  *Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 709–11 (2021) (holding Germany immune from claims arising from expropriations from German nationals because the Foreign Sovereign Immunities Act did not "purport[] to alter" the domestic takings rule).

Title III also evinces no Congressional intention to abrogate the domestic takings rule by authorizing U.S. courts to adjudicate claims arising from takings the Cuban Government committed against its own nationals.  As recently recognized in *Regueiro v. Am. Airlines, Inc.*, No. 19-cv-23965-JEM, 2022 WL 2399748, at *8 (S.D. Fla. May 20, 2022), *report and recommendation adopted in part*, 2022 WL 2352414 (S.D. Fla. June 30, 2022), *appeal filed*, No. 22-12538 (11th Cir. Aug. 2, 2022), Title III was enacted to address:

> "[t]he wrongful confiscation or taking of property <u>belonging to United States nationals</u> by the Cuban Government, and the subsequent exploitation of <u>this property</u> at the expense of the rightful owner, undermines the comity of nations, the free flow of commerce, and economic development." *Id*. at § 6081(2). The Act further finds that the Cuban Government "is offering foreign investors the opportunity" to exploit property, "some of which were <u>confiscated from United States nationals</u>." *Id*. at § 6081(5). And critically, it is "[t]his trafficking" in confiscated property, that provides financial benefit to the current Cuban Government and "thus undermines the foreign policy of the United States . . .  to protect the claims of United States nationals who had property wrongfully confiscated by the Cuban Government." *Id*. at § 8061(6)(B). "To deter trafficking in wrongfully confiscated property, United States nationals who were the victims of <u>these confiscations</u> should be endowed with a judicial remedy in the courts of the United States that would deny traffickers any profits from economically exploiting Castro's wrongful seizures." *Id*. at § 6081(11).

2022 WL 2399748, at *6 (alterations in original).

19

As here, in *Regueiro*, the property in question was allegedly confiscated from a Cuban entity in which the plaintiff's ancestor allegedly held shares. The ancestor was a Cuban national at the time of confiscation. Drawing upon the congressional statement of purpose and findings noted above, the court determined in its Report and Recommendation that the plaintiff's Title III claim was barred because the property in question was not confiscated from a U.S. national. *Id.* at *6-8.

The *Regueiro* court's reading of Title III to exclude then-Cuban citizens from pursuing seizures by the Cuban government is consistent not only with background principles of international law (*Philip*, 141 S. Ct. at 712) but also with Title III's legislative history.  Legislative records specify that the purpose of Title III is to address "wrongfully confiscated *American properties* and the objective of deterring the use of wrongfully confiscated *American properties*." 142 Cong. Rec. H1645-02 at H1659, 1996 WL 90487 (Mar. 4, 1996) (emphasis added).

There are no material factual distinctions between *Regueiro* and this case with respect to the dispositive question of whether the subject property was confiscated from a U.S. national. Non-U.S. nationals Ernesto Romagosa y Sanchez and Amparo Diaz y Martinez—who, according to Plaintiffs, allegedly held claims later passed to their descendants (Am. Compl., ¶ 97)—could never "own a claim" to confiscated property in the first instance, because such confiscations would have been lawful under Cuban law and would not have violated international law.

Plaintiffs' failure to allege that the Cuban government confiscated the property in question from a U.S. national is the final death knell to their Title III claim.

## CONCLUSION

The Court should dismiss the Amended Complaint for lack of personal jurisdiction, lack of subject matter jurisdiction, or failure to state a claim.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

OF COUNSEL:

Alex J. Brackett
Caroline Schmidt Burton
Andrew P. Thornton-Dibb
Jah Akande
MCGUIRE WOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA  23219-3916
(804) 775-1000


September 21, 2022

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 21, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 21, 2021, upon the following in the manner indicated:

Michael L. Vild, Esquire                          *VIA ELECTRONIC MAIL*
CROSS & SIMON, LLC
1105 North Market Street, Suite 901
Wilmington, DE  19801
*Attorneys for Plaintiffs*

David A. Baron, Esquire                          *VIA ELECTRONIC MAIL*
Melvin White, Esquire
Laina C. Lopez, Esquire
Jared R. Butcher, Esquire
BERLINER CORCORAN & ROWE LLP
1101 17th Street, N.W., Suite 1100
Washington, D.C.  20036-4798
*Attorneys for Plaintiffs*

Richard W. Fields, Esquire                        *VIA ELECTRONIC MAIL*
Martin F. Cunniff, Esquire
Edward Han, Esquire
FIELDS PLLC
1701 Pennsylvania Avenue, N.W., Suite 200
Washington, D.C.  20006
*Attorneys for Plaintiffs*

*/s/ Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)