**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

RICHARD SIERRA; VERONICA GOOCH;　　)
ROLAND SIERRA; LUCIA LLERAS DE　　　)
LABRADA; PRISCILLA LLERAS-BUSH, in　)
her personal capacity and as Personal　　　)
Representative of the ESTATE OF OLGA　　)
ROMAGOSA; MÁRIAN MARIA DE LOS　　)　　　C.A. No. 1:22-cv-00366-GBW
ANGELES ROMAGOSA; and LISETTE　　　)
ROMAGOSA SMYRNIOS,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiffs,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
TRAFIGURA TRADING, LLC, and　　　　　)
TRAFIGURA GROUP PTE. LTD.,　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　　　)
　　　　　　　　　　　　　　　　　　)

**PLAINTIFFS' BRIEF IN SUPPORT OF**
**MOTION FOR JURISDICTIONAL DISCOVERY**

CROSS & SIMON, LLC
Michael L. Vild (No. 3042)
1105 N. Market Street
Suite 901
Wilmington, Delaware 19801
Tel:  (302) 777-4200
Facsimile: (302) 777-4224
Email: mvild@crosslaw.com

*Counsel for Plaintiffs*

Dated: October 25, 2022

## TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………………..…i

TABLE OF AUTHORITIES…………………………………………………………………...iii

NATURE AND STAGE OF PROCEEDINGS……………………………………….........1

SUMMARY OF ARGUMENT……………………………………………………………....2

STATEMENT OF FACTS……………………………………………………………..…....3

    A.  Trafigura Group's U.S. Financing……………………………………………………3

    B.  Trafigura Group's Zinc Production In The United States And Cuba………………....5

    C.  Trafigura Group's Contacts Throughout The United States……………………..…6

    D.  Trafigura Group's Statements Regarding Its U.S. Contacts……………….....……..9

    E.  Trafigura Group's Ownership Structure……………………………………..…....9

ARGUMENT…………………………………………………………………………..…10

  I.    THE COURT SHOULD ALLOW JURISDICTIONAL
       DISCOVERY IF PLAINTIFFS' JURISDICTIONAL THEORIES
       ARE NOT FRIVOLOUS……………………………………………….……….…10

  II.   PLAINTIFFS' JURISDICTIONAL THEORIES
       ARE NOT FRIVOLOUS…………………………………………………………...12

    A.  Under Rule 4(k)(2), The Court May Exercise
       Jurisdiction Based On All Of Trafigura Group's
       Contacts With The United States…………………………………………...12

    B.  The Exercise Of Personal Jurisdiction Over
       Trafigura Group Is Consistent With Due Process………………………13

       1.  Trafigura Group's Contacts With The United States
          Are Sufficient To Confer Specific Jurisdiction………………………….13

       2.  Trafigura Group's Contacts With The United States
          Are Sufficient To Confer General Jurisdiction…………………………..15

3.   The U.S. Contacts Of Trafigura Group's Subsidiaries
      May Be Imputed To Trafigura Group…….……………………..…17

4.   Trafigura Group's Tortious Conduct Is Sufficient
      For Jurisdiction…………………………………………………...19

CONCLUSION……………………………………………………………………...20

# TABLE OF AUTHORITIES

**CASES:**

*Adtile Techs. Inc. v. Perion Network Ltd*.,
    192 F. Supp. 3d 515 (D. Del. 2016)……………………………………………16, 17

*Am. Fid. Assur. Co. v. Bank of N.Y. Mellon*,
    810 F.3d 1234 (10th Cir. 2016)………………………………………………16

*Applied Biosystems, Inc. v. Cruachem, Ltd.*,
    772 F. Supp. 1458 (D. Del. 1991)………………………………………...…17

*Base Metal Trading Ltd. v. OJSC Novokuznetsky Aluminum Factory*,
    47 F. App'x 73 (3d Cir. 2002)………………………………………………12, 15

*BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*,
    229 F.3d 254 (3d Cir. 2000)………………………………………….…...…13

*Carteret Sav. Bank, FA v. Shushan*,
    954 F.2d 141 (3d Cir. 1992)………………………………………………...19

*Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*,
    723 F.2d 357 (3d Cir. 1983)………………………………………………...11

*Conformis, Inc. v. Zimmer Biomet Holdings, Inc.*,
    2022 U.S. Dist. LEXIS 99343
    (D. Del. June 3, 2022)………………………………………………...…12

*D'Jamoos v. Pilatus Aircraft*,
    566 F.3d 94 (3d Cir. 2009)………………………………………………17

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)………………………………………………………16, 18

*De Fernandez v. Seaboard Marine, Ltd*.,
    2022 U.S. Dist. LEXIS 149248
    (S.D. Fla. Aug. 19, 2022)………………………………………………...20

*Fid. Nat'l Info. Servs. v. Plano Encryption Techs., LLC*,
    2016 U.S. Dist. LEXIS 54653
    (D. Del. Apr. 25, 2016)………………………………………...………...18

*Finjan LLC v. Trustwave Holdings, Inc.*,
    2021 U.S. Dist. LEXIS 210217
    (D. Del. Oct. 29, 2021)………………………………………………...……13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011)……………………………………………………15, 16

*Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*,
  43 F.4th 1303 (11th Cir. 2022)……………………………………………..19

*In re Auto. Refinishing Paint Antitrust Litig.*,
  358 F.3d 288 (3d Cir. 2004)………………………………………………...12

*In re Chocolate Confectionary Antitrust Litig.*,
  602 F. Supp. 2d 538 (M.D. Pa. 2009)……………………………………….17, 18

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)………………………………………………………...…14

*J. McIntyre Mach., Ltd. v. Nicastro*,
  564 U.S. 873 (2011)………………………………………………………...…13

*Kehm Oil Co. v. Texaco, Inc.*,
  537 F.3d 290 (3d Cir. 2008)………………………………………………...…17

*Licci v. Lebanese Canadian Bank*,
  732 F.3d 161 (2d Cir. 2013)………………………………………………..…14

*Lucas v. Gulf & Western. Industries, Inc.*,
  666 F.2d 800 (3d Cir. 1981)……………………………………..………………17

*Mellon Bank PSFS, Nat'l Ass'n v. Farino*,
  960 F.2d 1217 (3d Cir. 1992)………………………………..…………………13

*Metcalfe v. Renaissance Marine, Inc.*,
  566 F.3d 324 (3d Cir. 2009)…………………………………….………10, 11

*Miller v. Adler*,
  2018 U.S. Dist. LEXIS 109044,
  (D.N.J. June 29, 2018)…………………………………………...…………....19

*Perkins v. Benguet Consol. Mining Co*.,
342 U.S. 437 (1952)………………………………………………………16-17

*Pfizer Inc. v. Mylan Inc.*,
201 F. Supp. 3d 483 (D. Del. 2016)…………………………………………...17

*Rettig v. Alliance Coal, LLC*,
  2022 U.S. Dist. LEXIS 166195
  (N.D.W.D. Sept. 14, 2022)…………………………………………...…14, 16

*Rocke v. Pebble Beach Co.*,
    541 F. App'x 208 (3d Cir. 2013)……………………………………………………...11

*Shuker v. Smith & Nephew, PLC*,
    885 F.3d 760 (3d Cir. 2018)……………………………………………………...11

*Sony Corp. v. Pace PLC*,
    2016 U.S. Dist. LEXIS 17430
    (D. Del. Feb. 12, 2016)……………………………………………………...12

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003)………………………………………..……...10, 12

*TriDiNetworks Ltd. v. NXP USA, Inc.*,
    2020 U.S. Dist. LEXIS 85799
    (D. Del. May 7, 2020)……………………………………………………...13

*TruePosition, Inc. v. LM Ericsson Tel. Co.*,
    844 F. Supp. 2d 571 (E.D. Pa. 2012)…………………………………………15

*UHS of Del., Inc. v. United Health Servs.*,
    2015 U.S. Dist. LEXIS 15786
    M.D. Pa. Feb. 10, 2015)…...…………………………………………18-19

*Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*,
    2021 U.S. Dist. LEXIS 247162
    (E.D. Pa. Dec. 29, 2021)……………………………………………….…...15

**STATUTES:**

22 U.S.C. §§ 6021 *et. seq*………………………………………………………….1

22 U.S.C. §§ 6081, *et seq*………………………………………………...……1, 14

22 U.S.C. § 6082(a)(1)……………………………………………………………...15

**RULES:**

Fed. R. Civ. P. 12(b)(2)……………………………………………….……1, 20

Fed. R. Civ. P. 4(k)(2)………………………………………….1, 2, 10, 11, 12, 15

Concurrent with the filing of this motion, Plaintiffs Richard Sierra, *et al*. ("Plaintiffs") filed an opposition to the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) of Defendant Trafigura Group PTE ("Trafigura Group"). In that opposition, Plaintiffs present evidence sufficient to support the Court's exercise of specific and general personal jurisdiction under the federal long-arm statute, Fed. R. Civ. P. 4(k)(2). Nevertheless, should the Court find the current record evidence insufficient to establish jurisdiction, Plaintiffs respectfully request leave to conduct limited jurisdictional discovery of the full extent of Trafigura Group's contacts with the U.S.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs brought this action under the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996, 22 U.S.C. §§ 6021, *et. seq*., commonly referred to as the "Helms-Burton Act." *See* Amended Complaint, D.I. 9. Title III of the Helms-Burton Act, 22 U.S.C. §§ 6081, *et seq*., provides a private remedy to U.S. nationals whose property was confiscated by the Cuban government after January 1, 1959, against anyone who "traffics" in (*i.e.*, "possesses, obtains control of, manages, uses, or otherwise acquires or holds and interest in" or "engages in a commercial activity using or otherwise benefitting from") such property.

Plaintiffs allege that their family built and owned Minas de Matahambre, S.A. (the "Mining Company"), its assets—including Terminal Maritima de Santa Lucia (the port of Santa Lucia and its facilities), agricultural land, mining concessions, roads, infrastructure, intangibles, and future and contingent rights—and a sulfuric acid plant in western Cuba. *See* D.I. 9 ¶¶ 80-94. In 1960, the Cuban government confiscated the Mining Company's mining operation and assets and the sulfuric acid plant (collectively, the "Confiscated Property"). *See* D.I. 9 ¶¶ 77, 95.

In 2015, the Trafigura Group made a substantial investment in a mining operation in Cuba, conducted through EMINCAR—a joint venture between Trafigura Caribbean Mining, BV, a

1

subsidiary of Trafigura Group, and Geominera, a Cuban state agency.  *See* D.I. 9 ¶¶ 101-03. Trafigura Group traffics in the Confiscated Property as part of that mining operation, which will generate billions of dollars' worth of commodities for Trafigura Group's global trading business. *See* D.I. 9 ¶¶ 105, 107.

On March 22, 2022, Plaintiffs filed a Complaint against Trafigura Trading, LLC ("Trafigura Trading"), a U.S. subsidiary of Trafigura Group.  *See* D.I. 1.  On May 17, 2022, Plaintiffs filed an Amended Complaint, which added Trafigura Group as a defendant.  *See* D.I. 9. On September 21, 2022, Trafigura Group filed a motion to dismiss on grounds of, *inter alia*, lack of personal jurisdiction.  *See* D.I. 22 at 5.  Concurrently with this motion, Plaintiffs have filed an Opposition to Trafigura Group's motion to dismiss.  In the current motion, Plaintiffs request that— should the Court find the evidence cited in Plaintiffs' Opposition insufficient to support a finding of personal jurisdiction over Trafigura Group—the Court grant Plaintiffs leave to conduct limited jurisdictional discovery.

## SUMMARY OF ARGUMENT

In the Third Circuit, courts are to allow jurisdictional discovery where, as here, the plaintiffs' jurisdictional theories are not frivolous.  Under Rule 4(k)(2), the Court may exercise jurisdiction based on all Trafigura Group's contacts with the United States because (1) the case arises from a U.S. statute, (2) Trafigura Group has not identified a particular state in which it is amenable to jurisdiction, and (3) the requirements of due process are satisfied.  In particular, the exercise of specific personal jurisdiction over Trafigura Group is consistent with due process because Trafigura Group obtains financing in the United States, which it uses to fund its investments in EMINCAR, and because Trafigura Group's zinc production in the United States facilitates the same global zinc trade as does its zinc production in Cuba.  Moreover, Trafigura

Group's extensive contacts with the United States—including its ownership of numerous unique assets central to its trading business that are physically located throughout the United States, including mines, transportation facilities, and storage facilities; the presence of one of its principal trading desks; its numerous subsidiaries principally located and incorporated in the United States; its marketing materials specifically targeting U.S. customers and touting its leadership position in U.S. markets; and its access to U.S. financial markets and entities—are sufficient to confer general jurisdiction.   The U.S. contacts of Trafigura Group's subsidiaries may be imputed to Trafigura Group because the evidence of Trafigura Group's control over those subsidiaries is sufficient to support a finding that they are agents or alter egos of Trafigura Group.   Specifically, Trafigura Group (1) owns all or a substantial majority of the shares of many of its subsidiaries with U.S. contacts; (2) is owned by its employees, suggesting overlaps in management of the parent and subsidiaries; and (3) presents a unified marketing image, projecting that its subsidiaries act in a seamless, coordinated manner for the benefit of Trafigura Group's customers and partners. Moreover, the Court may ignore Trafigura Group's corporate form based on evidence—including its involvement in past violations U.S. Cuba sanctions—that it is attempting to use its subsidiaries to shield itself from liability under the Helms-Burton Act.

At a minimum, Plaintiffs theories of jurisdiction are non-frivolous and supported by the evidence available to them, justifying jurisdictional discovery.

## STATEMENT OF FACTS

### A.      Trafigura Group's U.S. Financing

Trafigura Group regularly accesses financial markets in the United States to fund its activities around the world.  On April 8, 2021, Trafigura Group announced: "Trafigura Group Pte Ltd ('Trafigura' or the 'Company'), one of the world's leading independent commodity trading

companies, announced the closing of *a new US Private Placement transaction, raising USD203.5 million of financing*…. The transaction was *Trafigura's sixth in this market*…." Ex. 34; Ex. 2 at 9 (emphasis added).

Funds raised in the United States have been used specifically to fund Trafigura Group's investment in EMINCAR.  Trafigura Group's subsidiary Trafigura Caribbean Mining obtained a $140 million credit facility from an unidentified "Group Company," and then made a $140 million credit facility available to EMINCAR.  Ex. 32 at 6-7.  This transaction coincided with the $145 million capital raised through U.S. private placement in March 2013.  Ex. 27 at 13.  The private placement was conducted by Trafigura Funding SA, the entity responsible for making loans to other TGPL companies.  *Id.*  It follows that one of those companies is the "Group Company" that extended the $140 million credit facility to Trafigura Caribbean Mining.

Although Defendants have submitted declarations denying the use of "dollar denominated" investments or payments via U.S. financial institutions (D.I. 22-1, Ex. G ¶¶ 5-6), the financial statements of Trafigura Caribbean Mining BV suggest the investment was, in fact, made in U.S. dollars.  When those financial statements described transactions conducted in Euros—*e.g.*, issued Share Capital in 2013 through 2015—the values presented in U.S. dollars fluctuated over time with exchange rates, which are explicitly disclosed.  Ex. 32 at 8 (issued share capital adjusted for USD / EUR exchange rate); Ex. 33 at 7 (same).  In contrast, the U.S. dollar values of Trafigura Caribbean Mining BV's investment (USD 12,613,182) in and debt financing (USD 140 million) of EMINCAR did not change between 2013 and 2015.  Ex. 32 at 6, 7; Ex. 33 at 6.

There is reason to doubt Trafigura Group's transparency in describing its investments in Cuba that violate U.S. sanctions regimes.  In June 2014, BNP Paribas agreed to plead guilty to violations of, *inter alia*, the Trading with the Enemy Act, and paid historic fines and penalties in

4

excess of $8.9 billion, "by processing billions of dollars of transactions through the U.S. financial system on behalf of Sudanese, Iranian, and Cuban entities subject to U.S. sanctions."  Ex. 43.  The fact submission supporting the guilty plea stated that "the credit facilities … provide[d] financing for Cuban entities and for business seeking to do U.S. dollar business with Cuban entities.  One such facility, for example, involved U.S. dollar loans to ***a Dutch company*** to finance the purchase of crude oil products destined to be refined in and sold to Cuba."  Ex. 25 (emphasis added).  According to a book published last year by two Bloomberg journalists, "Two former Trafigura senior executives with direct knowledge of the situation confirmed, under condition of anonymity, that the Dutch company was Trafigura."  Ex. 44, endnote 4 (J. Blas, J. Farchy, *The World for Sale* (Oxford Univ. Press 2021).

Trafigura appears to have retained prominent defense counsel in connection with investigations related to the BNP Paribas case.  William Burck, Co-Managing Partner of Quinn Emanuel Urquhart & Sullivan, LLP, had touted his representation of Trafigura in several matters in his biography on the firm's website; in a separate entry, he noted his "Defense of a multinational commodities trading company in investigations by the US Department of Justice, the US Attorney's Office for the Southern District of New York, and the Manhattan District Attorney's Office of alleged violations of US trade sanctions on doing business in Iran, Sudan and Cuba"—precisely the countries involved in the BNP Paribas case.  *See* https://web.archive.org/web/20220117165821/https://www.quinnemanuel.com/attorneys/burck-william/.      Sometime around mid-2022, the "Notable Representations" portion of Mr. Burck's web bio, including these entries, was removed from the Quinn Emanuel website.

### B.      Trafigura Group's Zinc Production In The United States And Cuba

Trafigura Group produces zinc in both the United States and Cuba.  In a section of its

website called "Spotlight on Trafigura in the United States," Trafigura Group boasts that "we operate two major mining complexes and a smelter at three locations in Tennessee," including five mines, two processing plants, and a refinery. Ex. 24. The entities in which these mines and smelter are held—Nyrstar Tennessee Mines – Gordonsville LLC, Nyrstar Tennessee Mines – Strawberry Plains LLC, and Nyrstar Clarkville Inc.—are each listed in Trafigura Group's 2021 Annual Report as 98.5% owned "Consolidated subsidiaries" (Ex. 2 at 122) and are incorporated in Delaware and Maryland. *See* Exs. 20, 21, and 19 respectively. Elsewhere on its website, under the heading "Cuban Collaboration," Trafigura Group refers to its investment in "Emincar, a joint venture with the Government of Cuba to develop the Castellanos zinc and lead mine." (https://www.trafigura.com/about-us/assets-and-alliances/trafigura-mining-group.)

Zinc produced in the United States and zinc produced in Cuba are part of the same global trade, and the ability to source zinc from either country is central to Trafigura Group's metals trading business. On its website, Trafigura Group asserts that it is:

> the market leader for the majority of the refined metals we trade. We trade … lead, zinc, nickel and precious metals. We maintain a global presence. We have the knowledge on the ground to source metals swiftly and cost-effectively from around the world.

Ex. 41. Elsewhere on its website, Trafigura Group asserts: "As one of the world's largest metals and minerals traders, Trafigura is building global connectivity between miners, smelters and refined metal fabricators." Ex. 42.

### C.    Trafigura Group's Contacts Throughout The United States

In addition to the Nyrstar entities, Trafigura Group has contacts throughout the United States that are unique and at the core of its business. A non-exhaustive list includes:

- **Trafigura Trading**. Trafigura Trading, LLC, with offices in Houston and Midland, TX, "is one of the largest and most active commodity traders in the US, present across oil, metals and bulk minerals, with a rapidly growing

footprint in the US renewable energy space." Ex. 24.  Trafigura Trading LLC is one of the "principal entities" within the consolidated Trafigura group.  (D.I. 22-1, ECF Page 103.)  Trafigura Trading, LLC, a Delaware corporation, is listed as a 100% owned consolidated subsidiary of Trafigura Group.  Ex. 2 at 122; Ex. 37.

- **U.S. Oil Producers and Facilities**. "Key to the Group's US oil operations is its substantial footprint in the south, where we gather over 350,000 barrels per day of crude oil from the Permian and Eagle Ford Basins and transport these volumes via rail, road and pipeline to our main export terminals in" Texas and Louisiana. Ex. 24.  In its 2021 Annual Report, Trafigura Group states: "Core to our crude oil strategy is the Midland shale oil basin in Texas, where we continued to invest in infrastructure such as pipelines, tanks and dock facilities, enabling us to ship US crude oil to world markets."  Ex. 2 at 19.  A 2020 Trafigura Group brochure asserts: "We source our Midland crude from over 40 producers in the Basin, using our extensive network of gathering and logistics infrastructure …." Ex. 38 at 7.

- **Impala Burnside**. Impala "Burnside terminal in Louisiana is one of the leading bulk exporting facilities in the US…." for "coal, petroleum coke, bauxite, alumina and other dry commodities." Ex. 24; Ex. 15 at 2.  Its "strategic location provides ready access to the entire 25,000 nautical miles of the US inland river system, immediate access to the US Interstate highway system, all class one railroads and direct access to the Gulf of Mexico via the Mississippi River shipping lanes."  (*Id.*)  Impala Terminals Burnside LLC, a Delaware corporation, is listed as a 100% owned consolidated subsidiary of Trafigura Group. Ex. 2 at 122; Ex. 14.

- **Puma Energy Caribe**. Puma Energy Caribe LLC "entered Puerto Rico in 2008, and [we] have progressively expanded our presence there…."; it "own[s] four terminals in Puerto Rico and one in the US Virgin Islands… [and] operate[s] a network of 329 retail sites…." (https://pumaenergy.com/en/ whoweare/whereweoperate/detailspage?countryName=Puerto-Rico-and-SVI&region=1.)  Puma Energy Caribe LLC is listed as a 93.4% owned consolidated subsidiary of Trafigura Group. Ex. 2 at 122.

- **Galena Asset Management**. Galena Asset Management, S.A., "Trafigura's wholly owned and regulated investment subsidiary," is listed as a 100% owned consolidated subsidiary of Trafigura Group.  Ex. 2 at 37, 122; Ex. 12.  It had an active registration with the SEC, which is required to solicit investments in the United States.  Ex. 13.

- **Wolverine Fuels**. Wolverine Fuels has "a diverse portfolio of four mining operations in Utah and Colorado that produce an aggregate of 13 million tons of high-BTU, low-sulfur bituminous coal.  Our mines include some of the most productive and longest, continuously operating mines in the United States." *See* https://wolverinefuels.com/operations/.      Wolverine Fuels, a Delaware

corporation, "is majority-owned by the Galena Private Equity Resources Fund," which is run by Galena Asset Management. *See* Ex. 31; https://wolverinefuels.com/about-us/ "Trafigura Trading, LLC, a subsidiary of Trafigura Group Pte. Ltd. is our exclusive marketing agent, giving Wolverine Fuels the opportunity to take advantage of Trafigura's global coal sales platform." *See* https://wolverinefuels.com/about-us/.

- **Energy Renaissance**. On December 2, 2021, "Trafigura Holdings U.S., Inc., a wholly-owned, U.S. indirect subsidiary of Trafigura Group Pte. Ltd., one of the world's leading independent commodity trading companies, … acquired a majority share in power trading platform Energy Renaissance LLC," which is based in Colorado and incorporated in Delaware. Ex. 30; Ex. 8.

- **Swift Current Energy**. Nala Renewables Ltd., "a 50:50 joint venture between Trafigura Group Pte. Ltd. and IFM Investors," together with Buckeye Partners, acquired "a majority ownership of leading North American clean energy development and investment platform Swift Current Energy LLC." Ex. 2 at 28. Swift Current Energy LLC, a Delaware corporation, "is headquartered in Boston, Massachusetts and has offices in Illinois, Maine, Montana and Texas." *See* https://www.swiftcurrentenergy.com/ about/; Ex. 26.

- **Bluewater Texas Terminal**. In February 2020, "Philips 66 … and Trafigura Group Pte. Ltd. announce[d] they have formed a 50/50 joint venture, Bluewater Texas Terminal LLC … to develop an offshore deepwater port project located approximately 21 nautical miles east of the entrance to the Port of Corpus Christi." Ex. 22. Bluewater Texas Terminal LLC is incorporated in Delaware. Ex. 3.

- **Sawtooth Caverns**. "Trafigura and Haddington Ventures purchased Sawtooth Caverns LLC located near Delta, Utah. Sawtooth Caverns LLC is the largest natural gas liquids storage facility in western US…. The facility is strategically located at an important transport crossroads that includes access to the Union Pacific rail system and interstate highways…." Ex. 24. Sawtooth Caverns LLC is incorporated in Delaware. Ex. 23.

- **TFG Marine**. "TFG Marine is a global marine fuels supply and procurement joint venture, between physical commodity trading company Trafigura Group Pte and [two] ship owning companies…." *See* https://www.trafigura.com/about-us/assets-and-alliances/tfg-marine/ Trafigura Group is the majority shareholder. *See* https://www.tfgmarine.com/about-us/. TFG lists as its U.S. Regions of Operation: Magellan Terminal, Port of Ingleside, Corpus Christi, and New York Harbor. *See* https://www.tfgmarine.com/our-global-network/.

- **Trafigura Pte.'s Contacts**. Trafigura Pte. Ltd., a 100%-owned subsidiary of Trafigura Group (Ex. 2 at 122) has engaged in several transactions with U.S. entities, including a 15-year agreement to purchase liquified natural gas from

Cheniere Energy, a Houston-based energy company, and a three-year liquefaction sales and purchase agreement with Freeport LNG Marketing, in Freeport, Texas.  Exs. 4 and 11.

### D.    Trafigura Group's Statements Regarding Its U.S. Contacts

Trafigura Group attracts trading opportunities in the United States by portraying its constituent entities as a seamless, integrated and coordinated unit, deploying "our global network to move physical commodities from places where they are plentiful to where they are most needed." (https://www.trafigura.com/.)  A lengthy section of Trafigura Group's website entitled "Spotlight on Trafigura in the United States" asserts that "Trafigura is one of the largest and most active commodity traders in the US, present across oil, metals and bulk minerals, with a rapidly growing footprint in the US renewable energy space," while discussing Bluewater Texas Terminals, Sawtooth Caverns, Nyrstar, Impala Burnside Terminals, and Nala Renewables, among others.  Ex. 24.  Similarly, in a brochure entitled "Advancing US Exports: Crude Oil," Trafigura Group asserts that it "has established a unique market position in the US" and that "With 80 offices in 41 countries, Trafigura's network is truly global."  Ex. 38.  In this brochure, Trafigura Group also describes the roles of Impala Terminals, the Trafigura Mining Group, Galena Asset Management, Nyrstar, and Puma Energy.  *Id*.  Nowhere does Trafigura Group suggest that the corporate separateness of these entities—operating at different points in the supply chain—impedes the efficiency with which it trades or transports any commodities.

### E.    Trafigura Group's Ownership Structure

Trafigura Group is not publicly owned.  In its 2021 Annual Report, Trafigura Group explains that it is owned by approximately 1,000 employees.  Ex. 2 at 13.  The company claims that this ownership model provides the advantages of "a long-term perspective in running the company; close alignment between management and employees; conservative risk management;

and a highly collaborative approach to business development." *Id*.  Some managers of Trafigura Group's U.S. subsidiaries, such as Trafigura Trading LLC, are likely among the limited group of shareholders of the parent company and appear to be involved in the management of the parent company.  For example, "TJ Tedla joined Trafigura Trading LLC in April 2021 as Chief Financial Officer for North America, based in Houston."  Ex. 39.  Mr. Tedla is also listed as a member of the Trafigura Group's "Financial Leadership" on the company's website.  Ex. 40.

**ARGUMENT**

**I.  THE COURT SHOULD ALLOW JURISDICTIONAL DISCOVERY IF PLAINTIFFS' JURISDICTIONAL THEORIES ARE NOT FRIVOLOUS**

"[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). Indeed, "if a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' … the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us*, 318 F.3d at 456 (quoting *Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992); *see Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009) ("The Supreme Court instructs that 'where issues arise as to jurisdiction and venue, discovery is available to ascertain the facts bearing on such issues'"; granting jurisdictional discovery) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, n.13 (1978)).

In *Toys "R" Us*, the plaintiff had "requested jurisdictional discovery for the purpose of establishing either specific personal jurisdiction, or jurisdiction under the federal long-arm statute, Fed. R. Civ. P. 4(k)(2)." 318 F.3d at 455.  The Third Circuit reasoned that discovery was "a logical follow-up based on the information known to [the plaintiff]" and that discovery should have been

10

permitted "on the limited issue of [the defendant]'s business activities in the United States, including business plans, marketing strategies, and other commercial interactions." *Id.* at 458. District courts' refusals to grant jurisdictional discovery in appropriate cases have been reversed as abuses of discretion. *See id.* at 456; *Rocke v. Pebble Beach Co*., 541 F. App'x 208 (3d Cir. 2013) (holding "that the District Court abused its discretion in denying the [plaintiffs'] request for jurisdictional discovery"); *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 782 (3d Cir. 2018) (same).

The Third Circuit "has found jurisdictional discovery particularly appropriate where a defendant is a corporation." *Rocke*, 541 F. App'x at 212 (granting jurisdictional discovery where plaintiffs argued that "the business information they seek is in the sole possession of [the defendant]"); *see Metcalfe*, 566 F.3d at 336 (same); *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983) ("A plaintiff who is a total stranger to a corporation should not be required, unless he has been undiligent, to try such an issue on affidavits without the benefit of a full discovery.") (quoting *Surpitski v. Hughes-Keenan Corp*., 362 F.2d 254, 255-56 (1st Cir. 1966)). Moreover, where a foreign corporate defendant's "executives' declarations create a factual dispute regarding the basis for personal jurisdiction over [the defendant], it is appropriate … to allow the parties to revisit the factual issues by means of limited jurisdictional discovery." *Shuker*, 885 F.3d at 782.

Here, Plaintiffs' request for jurisdictional discovery is specific, non-frivolous, and a logical follow-up based on the information known to Plaintiffs. Plaintiffs have presented evidence suggesting with reasonable particularity the existence of contacts sufficient to support a finding of specific personal jurisdiction or jurisdiction under Fed. R. Civ. P. 4(k)(2) and Trafigura Group's executives declarations raise disputes as to the factual bases for jurisdiction. The Court should

11

therefore grant limited jurisdictional discovery.

## II.    PLAINTIFFS' JURISDICTIONAL THEORIES ARE NOT FRIVOLOUS

### A.    Under Rule 4(k)(2), The Court May Exercise Jurisdiction Based On All Of Trafigura Group's Contacts With The United States

Trafigura Group is subject to personal jurisdiction based on all its contacts with the United States, under Fed. R. Civ. P. 4(k)(2), which serves as a federal long-arm statute. *Toys "R" Us*, 318 F.3d at 455. Under Rule 4(k)(2), "[p]ersonal jurisdiction therein is not limited to the defendant's contacts with a particular federal judicial district or the forum state," but instead with the United States as a whole. *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 299 (3d Cir. 2004). Rule 4(k)(2) is intended to prevent "defendants escaping jurisdiction in U.S. federal courts while still having minimum contacts with the United States." *Sony Corp. v. Pace PLC*, 2016 U.S. Dist. LEXIS 17430, at *13-14 (D. Del. Feb. 12, 2016) (citing *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009).

Rule 4(k)(2) allows "a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *Base Metal Trading Ltd. v. OJSC Novokuznetsky Aluminum Factory*, 47 F. App'x 73, 75 (3d Cir. 2002). The first requirement is satisfied here because Plaintiffs bring their claim under the Helms-Burton Act, a federal statute. The second requirement is met because Trafigura Group has not identified a forum where it is subject to personal jurisdiction. *Conformis, Inc. v. Zimmer Biomet Holdings, Inc.*, 2022 U.S. Dist. LEXIS 99343, at *5 (D. Del. June 3, 2022) ("if the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)") (quoting *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009)). The burden therefore shifts to the

defendant to prove that extending jurisdiction would be unreasonable under the due process clause. *TriDiNetworks Ltd. v. NXP USA, Inc.*, 2020 U.S. Dist. LEXIS 85799, at *8 (D. Del. May 7, 2020). As shown below, the exercise of personal jurisdiction over Trafigura Group in this case will be consistent with due process.  At a minimum, Plaintiffs' theories of jurisdiction are non-frivolous, warranting jurisdictional discovery.

### B. The Exercise Of Personal Jurisdiction Over Trafigura Group Is Consistent With Due Process

Trafigura Group's contacts with the United States are sufficient to support the exercise of both specific and general personal jurisdiction.

### 1. Trafigura Group's Contacts With The United States Are Sufficient To Confer Specific Jurisdiction

A plaintiff can establish specific jurisdiction over a defendant by showing that (1) the defendant purposefully directed its activities at the forum; (2) the litigation arises out of or relates to at least one of the contacts; and (3) the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice.  *Finjan LLC v. Trustwave Holdings, Inc.*, 2021 U.S. Dist. LEXIS 210217, at *35 (D. Del. Oct. 29, 2021).  When the defendant "purposefully avails itself" of the forum, *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011), the forum generally has a "manifest interest" in providing redress for its citizens.  *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259-60 (3d Cir. 2000).

Here, the Court may exercise specific jurisdiction over Trafigura Group because it purposely directed activity to the United States—by obtaining financing from U.S. financial markets and entities—and the litigation arises from and relates to those contacts—some of that financing was used to fund Trafigura Group's investment in EMINCAR.  *E.g., Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217 (3d Cir. 1992) (asserting jurisdiction over a foreign company

that purposefully directed its activities to the forum by seeking a loan in the forum); *Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013) (a foreign party's "selection and repeated use of New York's banking system" constituted purposeful availment).

Specific jurisdiction is also appropriate because Trafigura Group purposely directed activity to the United States by acquiring and operating zinc mines in Tennessee to advance its global zinc trading; the litigation—involving a zinc mine in Cuba—arises from and relates to that trading. *See Rettig v. Alliance Coal, LLC*, 2022 U.S. Dist. LEXIS 166195, at *15-16 (N.D.W.Va. Sept. 14, 2022) (Delaware corporations having principal places of business in Oklahoma that owned subsidiaries in West Virginia that owned and operated coal mines in West Virginia were subject to specific jurisdiction "because Defendants have clearly reached into the state to solicit and initiate business by developing the mine[s] in … West Virginia").

Moreover, the exercise of jurisdiction here is consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). The relevant factors include (1) the burden that litigation places on the defendant, (2) the forum's interest in the litigation, and (3) the plaintiff's interest in obtaining convenient relief. *Burger King* at 477. In today's world, "modern transportation and communications have made it much less burdensome for a [foreign defendant] sued to defend himself in a State where he engages in economic activity," and "it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Id.* at 474. In the present case, (1) Trafigura Group has established relationships with U.S. legal counsel, (2) U.S. courts have a unique interest in enforcing the Helms-Burton Act, which directly implicates U.S. foreign policy, *see* 22 U.S.C. § 6081(6) ("'trafficking' in confiscated property … undermines the foreign policy of the United States"), and (3) Plaintiffs are statutorily required to be "United States nationals," 22 U.S.C. §

14

6082(a)(1), for whom U.S. courts will provide the most convenient relief.

**2.      Trafigura Group's Contacts With The United States Are Sufficient To Confer General Jurisdiction**

Alternatively, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *International Shoe Co. v. Wash.*, 326 U.S. 310, 317 (1945)). When applying Rule 4(k)(2), this inquiry is not limited to the defendant's contacts with a particular district or state; instead, "a court examines the defendant's nationwide contacts to determine if they are sufficient to support a holding that those contacts constitute 'continuous and systematic' presence in the United States." *Base Metal Trading*, 47 F. App'x at 76; *see Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*, 2021 U.S. Dist. LEXIS 247162, at *46 n.165 (E.D. Pa. Dec. 29, 2021).   When evaluating general jurisdiction, courts should look to the defendant's "purposeful and extensive availment" of the forum and the degree to which a corporation's contacts with a given forum are "central to the conduct of its business."  *TruePosition, Inc. v. LM Ericsson Tel. Co.*, 844 F. Supp. 2d 571, 587 (E.D. Pa. 2012).

As detailed above, Trafigura Group has at least the following U.S. contacts:

- Numerous unique assets, central to Trafigura Group's trading business, are physically located throughout the United States, including mines, transportation facilities, and storage facilities;

- U.S.-based Trafigura Trading LLC is one of Trafigura Group's principal trading desks;

- Many of Trafigura Group's subsidiaries have their principal places of business and are incorporated in the United States;

- Trafigura Group's marketing materials specifically target U.S. customers and

15

tout its unique position in U.S. markets; and

- Trafigura Group obtains financing from U.S. financial markets and entities.

Based on these substantial and continuous contacts, Trafigura Group is sufficiently "at home" in the United States to justify the exercise of general jurisdiction over it.  *See Rettig*, 2022 U.S. Dist. LEXIS 166195, at *17 (foreign corporations who owned coal mines in West Virginia through local subsidiaries "are subject to general jurisdiction").

This is not a case in which a plaintiff attempts to assert general jurisdiction merely because a defendant that sells a product around the world happens to make substantial sales of that product or maintains a physical or online marketing presence in the forum.  Accordingly, *Daimler AG v. Bauman*, 571 U.S. 117 (2014), does not preclude the exercise of jurisdiction over Trafigura Group. In *Daimler*, the Supreme Court held that a German manufacturer (Daimler) was not amenable to general jurisdiction in California based on the activity of the manufacturer's U.S. subsidiary, which "distributes Daimler-manufactured vehicles to independent dealerships throughout the United States, including California."  *Id.* at 121.

As *Daimler* emphasized, "*Goodyear* did not hold that a corporation may be subject to general jurisdiction *only* in the forum where it is incorporated or has its principal place of business…."  *Id*. at 137 (emphasis in original); s*ee, e.g., Adtile Techs. Inc. v. Perion Network Ltd*., 192 F. Supp. 3d 515 (D. Del. 2016) (observing that, in *Daimler*, "[t]he Supreme Court did not hold that a corporation may be subject to general jurisdiction only in [a corporation's place of incorporation and principal place of business]"); *Am. Fid. Assur. Co. v. Bank of N.Y. Mellon*, 810 F.3d 1234, 1237, 1241 (10th Cir. 2016) ("when determining where a corporation can be deemed 'at home' when it has significant contacts in many fora, *Daimler* suggested the place of incorporation and principal place of business are particularly, ***though not solely***, important") (emphasis added).  Both *Goodyear*, 564 U.S. at 129, and *Daimler*, 571 U.S. at 118, cite *Perkins v.*

*Benguet Consol. Mining Co*., 342 U.S. 437 (1952) (Philippine mining company amenable to suit in Ohio, where its president was temporarily located during the war), as an example of general jurisdiction being properly exercised over foreign company.

### 3.    The U.S. Contacts Of Trafigura Group's Subsidiaries May Be Imputed To Trafigura Group

Jurisdiction may be asserted over a foreign defendant based on a subsidiary's contacts with the forum if the defendant exercises sufficient control over the subsidiary to render the subsidiary an agent or an alter ego of the defendant. *Adtile*, 192 F. Supp. 3d at 522. The parent corporation will be considered responsible for the specific jurisdictional acts of the subsidiary through such an agency relationship. *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991). This theory can be applied to companies that are "two arms of the same business group" that may operate within agreements with each other. *Pfizer Inc. v. Mylan Inc.*, 201 F. Supp. 3d 483, 489 (D. Del. 2016) (citing *Cephalon, Inc. v. Watson Pharms., Inc.*, 629 F. Supp. 2d 338 (D. Del. 2009)). If a nominally independent subsidiary is a controlled agent, as opposed to a separate organization, *see D'Jamoos v. Pilatus Aircraft*, 566 F.3d 94, 108-09 (3d Cir. 2009); *Lucas v. Gulf & Western. Industries, Inc.*, 666 F.2d 800, 805-06 (3d Cir. 1981), or if the parent otherwise "controls" the subsidiary, *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008), then personal jurisdiction exists over the parent whenever personal jurisdiction exists over the subsidiary. A plaintiff may invoke this theory of jurisdiction over "nonresident corporations upon a finding that either the 'dominant' or 'subservient' corporation does business" within the forum. *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 570 (M.D. Pa. 2009).

Relevant indicia of control include the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business; no one factor is determinative. *Adtile*, 192 F. Supp. 3d at

522.  Another court within the Third Circuit included among the indicators of control: the parent owns all or a significant majority of the subsidiary's stock, commonality of officers or directors exists between the two corporations, the corporate family possesses a unified marketing image, including common branding of products.  *In re Chocolate*, 602 F. Supp. 2d at 569-70 (collecting cases).  Here, many of the relevant indicia of control are present: Trafigura Group owns all or a substantial majority of the shares of many of its subsidiaries with U.S. contacts.  Ex. 2 at 122-23 (listing nine U.S. subsidiaries owned 90 percent or more by Trafigura Group).  Trafigura Group's employee ownership model suggests overlaps in management of the parent and subsidiaries.  *Id.* at 13.  Trafigura Group also presents a unified marketing image, projecting that its subsidiaries act in a seamless, coordinated manner for the benefit of Trafigura Group's customers and partners. Ex. 24; Ex. 35.

Moreover, Delaware courts will disregard the corporate form "in the interest of justice, when such matters as fraud, contravention of law or contract, [or] public wrong … are involved." *Fid. Nat'l Info. Servs. v. Plano Encryption Techs., LLC*, 2016 U.S. Dist. LEXIS 54653, at *11 (D. Del. Apr. 25, 2016).  Here, there are sufficient indications that Trafigura Group is attempting to use its corporate structure to insulate itself from liability from violations of U.S. law—namely the Helms-Burton Act—to justify piercing the corporate veil.

Trafigura Group's reliance on *Daimler* to suggest that, as a foreign corporation, it cannot be subject to jurisdiction (D.I. at 8) is misplaced.  *Daimler* and its progeny do not hold that the activities of a U.S. subsidiary can never be imputed to a foreign parent.  To the contrary, in analyzing general jurisdiction, the Supreme Court specifically "assume[d] that [the U.S. subsidiary]'s contacts are attributable to Daimler."  *Id.* at 136.  While the Court criticized the Ninth Circuit's test for an agency relationship, which "appears to subject foreign corporations to general

jurisdiction whenever they have an in-state subsidiary," *id*., the Third Circuit test applied here has no such effect.  *See UHS of Del., Inc. v. United Health Servs*., 2015 U.S. Dist. LEXIS 15786 at *6-7, 14-47, 48 (M.D. Pa. Feb. 10, 2015) (finding an alter ego relationship because "defendants intentionally hold themselves out as a unified corporate organization" under "an allied and uniform brand").

   *Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303 (11th Cir. 2022), on which Trafigura Group relies (D.I. 22 at 10), is distinguishable.  Unlike Trafigura Group, the defendant in *Herederos* was a publicly traded company; Trafigura Group's employee-ownership model gives it greater control over its subsidiaries.  In any event, the plaintiffs in *Herederos* failed to move appropriately for jurisdictional discovery; the court's opinion suggests that, had such relief been timely requested, it would have been granted. *Id*. at 1312 n.4.

### 4.   Trafigura Group's Tortious Conduct Is Sufficient For Jurisdiction

   Under the *Calder* effects test, "a court may exercise personal jurisdiction over a nonresident defendant who acts outside the forum state to cause an effect upon the plaintiff within the forum state."  *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 148 (3d Cir. 1992).  Three prongs of the effects test are: 1) the defendant must have committed an intentional tort; 2) the plaintiff must have felt the brunt of the harm caused by the tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort; and 3) the defendant must have expressly aimed its tortious conduct at the forum, such that the forum can be said to be the focal point of tortious activity.  *Miller v. Adler*, 2018 U.S. Dist. LEXIS 109044, at *6-7 (D.N.J. June 29, 2018).

   Trafficking, for purposes of the HBA, is an intentional tort.  Courts have held that the injury from such trafficking occurs where the plaintiff is located: "In this case, the injury to Plaintiff

occurred in Florida where Plaintiff is located.   Although the injuring conduct — namely, trafficking — took place in Cuba, the injury caused by the injuring conduct was felt in Florida." *De Fernandez v. Seaboard Marine, Ltd*., 2022 U.S. Dist. LEXIS 149248, at *24 (S.D. Fla. Aug. 19, 2022).  Here, Plaintiffs are all located within the United States (Florida, and Texas specifically) and, therefore, the brunt of the harm was felt in the United States.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court order one hundred twenty (120) days of discovery, including interrogatories, document requests, and depositions, on issues of personal jurisdiction.  The scope of such discovery shall be limited to:

- Trafigura Group's efforts to obtain financing in the United States and/or from U.S. entities and Trafigura Group's use of such financing;

- The source(s) of funds invested by Trafigura Group or its subsidiaries in businesses in Cuba, including but not limited to EMINCAR;

- The involvement of Trafigura Group or its subsidiaries in U.S. legal proceedings, including any investigation of alleged violations of U.S. sanctions directed at Cuba;

- Trading by Trafigura Group or its subsidiaries of zinc or lead;

- The role of executives of subsidiaries of Trafigura Group in the ownership or management of Trafigura Group;

- The contacts of Trafigura Group or its subsidiaries with the United States, including the ownership of U.S. assets, contractual relationships with U.S. entities, and marketing efforts directed to entities in the United States;

- The role of Trafigura Group and its subsidiaries in the management of each U.S. subsidiary of Trafigura Group.

Plaintiffs further request an additional twenty-one (21) days from the close of such jurisdictional discovery to file a further response to Trafigura Group's Rule 12(b)(2) Motion.

Dated:  October 25, 2022

CROSS & SIMON, LLC

*/s/ Michael L. Vild*
Michael L. Vild (No. 3042)
1105 N. Market Street, Suite 901
Wilmington, Delaware 19801
Tel:  (302) 777-4200
Facsimile: (302) 777-4224
mvild@crosslaw.com

*Counsel for Plaintiffs*

*OF COUNSEL*

BERLINER CORCORAN & ROWE LLP
David A. Baron
(admitted *pro hac vice*)
Melvin White
(admitted *pro hac vice*)
Laina C. Lopez
(admitted *pro hac vice*)
Jared R. Butcher
(admitted *pro hac vice*)
1101 17th Street, N.W., Suite 1100
Washington, D.C. 20036-4798
Tel:  (202) 293-5555
Facsimile:  (202) 293-9035
dbaron@bcr-dc.com
mwhite@bcr-dc.com
llopez@bcr-dc.com
jbutcher@bcr-dc.com


FIELDS HAN CUNNIFF PLLC
Richard W. Fields
(admitted *pro hac vice*)
Martin F. Cunniff
(admitted *pro hac vice*)
Edward Han
(admitted *pro hac vice*)
1701 Pennsylvania Ave, N.W., Suite 200
Washington, D.C. 20006
Tel: (833) 382-9816
fields@fhcfirm.com
MartinCunniff@fhcfirm.com
edhan@fhcfirm.com